UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA          :          **08 CR. 100 (JSR)**

    - v -                                                    :

**JOSE RIVERA**                                    :

        Defendant.                        :

------------------------------------------------------X

# DEFENDANT JOSE RIVERA'S MOTION AND MEMORANDUM IN SUPPORT THEREOF TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL STOP, SEARCH AND SEIZURE

LEONARD F. JOY, ESQ.
Federal Defenders of New York
Attorney for Defendant
 **JOSE RIVERA**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8762

**DAVID E. PATTON, ESQ.**

TO:   MICHAEL J. GARCIA, ESQ.
      United States Attorney
      Southern District of New York
      One. St. Andrew's Plaza
      New York, New York 10007
      Attn: **HOWARD MASTER, ESQ.**
          Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA         :         **08 CR. 100 (JSR)**

    - v -                                                  :

**JOSE RIVERA**                                  :

       Defendant.                         :

-------------------------------------------------------X

**DEFENDANT JOSE RIVERA'S MOTION AND MEMORANDUM IN SUPPORT THEREOF TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL STOP, SEARCH AND SEIZURE**

The defendant, Jose Rivera, is charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Rivera hereby moves under the Federal Rules of Criminal Procedure 12(b)(3) and 41(h) to suppress evidence obtained as the result of an illegal stop, search and seizure by officers of the New York Police Department on January 4, 2008.

**Factual Background**

In the early morning hours of January 4, 2008, Jose Rivera was attempting to hail a livery cab near the intersection of E. 219th Street and White Plains Road in the Bronx, New York. (Declaration of Jose Rivera, ¶ 2, attached hereto as Exhibit A). He approached one cab where the driver quoted him a price that was too expensive. (Id.). He walked away from the cab and called a car service with his cell phone while he also looked for another cab to hail. (Id.). The car service did not answer and no other livery cabs were immediately present. (Id.).

Meanwhile, a dark sedan approached him. (Id., ¶ 3). At first, Mr. Rivera thought the car was a livery cab. (Id.). The windows of the car were tinted, and he could not see the interior clearly. As he started to approach the car, however, he noticed that there were several male passengers in the car and that one of them was waving him toward the car. (Id.). Not understanding who they were or why they wanted him to approach the car, Mr. Rivera waived them off and began looking for another cab. (Id.). As he walked away from the sedan, one of its occupants got out of the car and began walking toward him. (Id., ¶ 4). Mr. Rivera turned around and noticed that the man was wearing a shield and a vest. (Id.). The man shouted at him, "What you got in your hands?" (Id.). At that point, Mr. Rivera realized that the man was a police officer. (Id.). He displayed the cell phone and replied, "cell phone." (Id.). The officer then approached Mr. Rivera and began frisking him. (Id., ¶ 5). While frisking him, the officer reached inside Mr. Rivera's jacket and retrieved a gun, wrapped in a white sock, from the inside pocket of the jacket. (Id.). He then signaled to his fellow officers that he had found a gun, and the other officers approached Mr. Rivera, slammed him to the ground and placed him under arrest. (Id.). Shortly after his arrest, Mr. Rivera made incriminating statements regarding his possession of the gun. (Id., ¶ 6).

At no time did Mr. Rivera consent to the search of his person by the police. (Id., ¶ 7).

### The Complaint

The Complaint in this case was sworn out by Police Officer Alejandro Zapata and was based on statements made to him by one of the officers (referred to in the Complaint as "PO-1") involved in the stop and search. (See Complaint, ¶ 2, attached hereto as Exhibit B). According to PO-1, in the early morning on January 4, 2008, he and two other police officers ("PO-2" and

"PO-3") were patrolling in an unmarked car with tinted windows along White Plains Road near E. 219th Street in the Bronx when PO-1 observed Mr. Rivera "approaching several vehicles that appeared to be livery cabs without getting into the cabs." (Id., ¶ 2(a)). Based on this observation, the officers decided to "pull the car up alongside Rivera to investigate." (Id.).

After they pulled up to him, Mr. Rivera started to walk toward the undercover car but stopped and waived off the car and then walked away from the car. (Id., ¶ 2(b)). When Mr. Rivera waived off the car, PO-1 observed a black object in Mr. Rivera's hand that he "thought might be a weapon." (Id.).

After Mr. Rivera walked away from the undercover car, PO-1 "decided to get out of the unmarked police car to investigate Rivera further." (Id., ¶ 2(c)). While walking toward Mr. Rivera, the officer observed Mr. Rivera put his hands in his jacket pockets and remove them which led "PO-1 to be concerned that Rivera might have attempted to hide in his jacket pocket the black object that PO-1 had seen in Rivera's hand earlier." (Id., ¶ 2(c)). PO-1 states that he then approached Mr. Rivera, identified himself as a police officer, and patted him down whereupon he felt a hard object in Mr. Rivera's jacket and subsequently recovered a gun.

The Complaint fails to mention that prior to PO-1's search of Mr. Rivera, Mr. Rivera showed the officer that he was holding a cell phone and told him so. In addition, PO-1's assertion that Mr. Rivera approached "several" livery cabs without getting into them is false. Mr. Rivera attempted to arrange a ride with a single cab, and he abandoned that attempt when the driver wanted more money than Mr. Rivera was willing to pay.

## ARGUMENT

The police did not have a lawful basis to stop or frisk Mr. Rivera, and the gun recovered

4

from his person was obtained in violation of the Fourth Amendment.

### I. The Stop

A police officer may briefly detain and question an individual without a warrant only where the officer has a reasonable suspicion "that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). In evaluating whether an officer's reasons for a stop are legally sufficient, a court must determine if the officer had a "reasonable suspicion, based on specific and articulable facts, of unlawful conduct." United States v. Bayless, 201 F.3d 116, 132 (2d Cir.2000); see also, United States v. Scopo, 19 F.3d 777, 781 (2d Cir.1994).

Here, there was no reasonable and specific basis for suspecting that Mr. Rivera was engaged in criminal activity. He was attempting to negotiate a ride with a livery cab driver, and the negotiation failed. He was not acting in any way disorderly or suspicious; rather, he was engaging in a normal activity that thousands of New Yorkers engage in every day. When the officers' unmarked sedan pulled up near him, he first thought it might be a cab but then backed away when he saw that there were three men in the car whom he did not know. This too was perfectly reasonable behavior and not indicative of criminal activity -- indeed, approaching a car under such circumstances would likely be more suspicious than avoiding the car. Lastly, Mr. Rivera was holding a cell phone that PO-1 claims to have seen as a black object that might have been a weapon. Regardless of the reasonableness of that assumption -- and the defense contends that it was not reasonable -- its error was made known to the officer when Mr. Rivera showed him the phone and told him what it was.

### II. The Frisk

Even if Mr. Rivera's initial stop was somehow lawful, his subsequent frisk was not. In

order to conduct a lawful frisk without a warrant and without probable cause to arrest, the police need to have an objectively reasonable belief that a person is armed and presently dangerous. See, e.g., Ybara v. Illinois, 444 U.S. 85, 93 (1979) ("Nothing in Terry can be understood to allow a generalized 'cursory search for weapons'..."); United States v. Jaramillo, 25 F.3d 1146, 1151 (2d Cir.1994) (in order to frisk for weapons, the police must have a reasonable belief that the individual is "armed and presently dangerous to the officer or others.").

Here, for the same reasons enumerated above, Mr. Rivera was not only acting in a perfectly law-abiding manner, but he gave no reasonable indication whatsoever that he was "armed and presently dangerous." Courts within the Second Circuit have found reasonable suspicion lacking for a Terry stop or frisk under far more suspicious circumstances than those present here. See, e.g., United States v. Antuna, 186 F.Supp.2d 138, 145 (D.Conn. 2002) (no reasonable suspicion for stop where officer spotted someone he thought was wanted, who quickly looked away upon seeing the police and then intently watched the police after they drove away); United States v. Crump, 62 F.Supp.2d 560, 564 (D.Conn. 1999) (no reasonable suspicion for stop or frisk where officer believed defendant was deliberately trying to avoid a vehicle checkpoint in a high crime neighborhood by turning his car around and then after being stopped began to walk away from officer, acted a little nervous, and placed his hands in his pocket); United States v. Arenas, 37 F.Supp.2d 322, 327 (SDNY 1999) (no reasonable suspicion for stop or frisk where officers spotted a group of three men that appeared to be falsely posing as tourists and walking in an unusual formation, entered a store with one man appearing to act as a lookout and upon making eye contact with the police, left the store, walked quickly away and placed a dark object in his jacket pocket.).

The police did not have an objectively reasonable and specific basis for believing Mr. Rivera was armed and dangerous, and the frisk was unlawful.

### III. The Statements

The same morning of his arrest, while in custody, Mr. Rivera made a statement regarding his possession of the gun. Because Mr. Rivera was arrested based on an unconstitutional search and seizure, any subsequent statements made by him while in custody must also be suppressed as the fruits of the Fourth Amendment violation. Brown v. Illinois, 422 U.S. 590 (1975).

### CONCLUSION

The evidence recovered as a result of the stop, frisk and search of Mr. Rivera on January 4, 2008 should be suppressed. The police did not have a warrant, did not have probable cause to arrest Mr. Rivera and did not have an objectively reasonable and specific basis to believe that he was engaged in criminal activity or that he was armed and dangerous.

**Wherefore**, it is respectfully requested that this Court enter an order suppressing the physical evidence obtained by the New York Police Department in violation of the Fourth Amendment to the United States Constitution and all fruits of that illegal conduct.

Dated: New York, New York
       March 10, 2008

        LEONARD F. JOY, ESQ.
        Federal Defenders of New York
        Attorney for Defendant
         Jose Rivera
        52 Duane Street - 10th Floor
        New York, New York  10007
        Tel.:  (212) 417-8762

        _____
        **DAVID E. PATTON**

TO:    MICHAEL J. GARCIA, ESQ.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York  10007
        Attn.:  **HOWARD MASTER, ESQ**.
                Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 08 CR. 100 (JSR) |
| - v - | : | |
| **JOSE RIVERA** | : | |
| Defendant. | : | |

------------------------------------------------------X

## DECLARATION OF JOSE RIVERA

I, Jose Rivera, hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

1. I am the defendant in the above captioned criminal case, and I make this declaration in support of a motion pursuant to Rules 12(b)(3) and 41 of the Federal Rules of Criminal Procedure to suppress physical evidence and statements obtained from me by law enforcement authorities in violation of my constitutional rights. Since the only purpose of this declaration is to show that my constitutional rights were violated, I have not included every detail of what occurred.

2. In the early morning hours of January 4, 2008, I was attempting to hail a livery cab near the intersection of E. 219th Street and White Plains Road in the Bronx, New York. I approached one cab where the driver quoted me a price that was too expensive. I walked away from the cab and called a car service with my cell phone while I also looked for another cab to hail. The car service did not answer and no other livery cabs were

   immediately present.

3. Meanwhile, a dark sedan approached me. At first, I thought the car was a livery cab. The windows of the car were tinted, and I could not see the interior clearly. As I started to approach the car, however, I noticed that there were several male passengers in the car and that one of them was waving me toward the car. Not understanding who they were or why they wanted me to approach the car, I waived them off and began looking for another cab.

4. As I walked away from the sedan, one of its occupants got out of the car and began walking toward me. I turned around and noticed that the man was wearing a shield and a vest. The man shouted at me, "What you got in your hands?" At that point, I realized that the man was a police officer. I displayed the cell phone and replied, "cell phone."

5. The officer then approached me and began frisking me. While frisking me, he reached inside my jacket and retrieved a gun, wrapped in a white sock, from the inside pocket of the jacket. He then signaled to his fellow officers that he had found a gun, and the other officers approached me, slammed me to the ground and placed me under arrest.

6. Shortly after my arrest, I made incriminating statements regarding my possession of the gun.

7. At no time did I consent to the search of my person by the police.

8. Based on discussions with my attorney, it is my understanding that the police violated my constitutional rights when they stopped, frisked and searched me.


   I declare under penalty of perjury that the foregoing is true and accurate.

Dated: New York, New York
       March 7, 2008

                                                                 */s/ Jose Rivera*
                                                                 JOSE RIVERA

08 MAG 0129

Approved: _____
          HOWARD S. MASTER
          Assistant United States Attorney

Before:   HON. ANDREW J. PECK
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - x
                              :    Sealed Complaint
UNITED STATES OF AMERICA      :
                              :    Violation of
          -v.-                :    18 U.S.C. § 922(g)(1)
                              :
JOSE RIVERA,                  :    COUNTY OF OFFENSE:
                              :    BRONX
              Defendant.      :
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      Alejandro Zapata, being duly sworn, deposes and says that he is a Police Officer with the New York City Police Department, and charges as follows:

COUNT ONE

      On or about January 4, 2008, in the Southern District of New York, JOSE RIVERA, the defendant, after having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about December 11, 1995, in Bronx County Supreme Court for Criminal Possession of a Loaded Firearm in the Third Degree, in violation of New York Penal Law 265.02(4), unlawfully, willfully, and knowingly did possess in and affecting commerce a firearm, to wit, a .25 caliber Hawes handgun, which had previously been shipped and transported in interstate and foreign commerce.

      (Title 18, United States Code, Section 922(g)(1).)

      The bases for my knowledge and the foregoing charges are, in part, as follows:

      1.   I am a Police Officer with the New York City Police Department, and I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law-enforcement agents and others and my examination of reports and records. Because this affidavit is

being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

       2. From speaking to a New York City Police Department officer ("PO-1") who arrested JOSE RIVERA, the defendant, I learned, in substance and in part, and among other things, the following:

       (a) On or about the early morning of January 4, 2008, PO-1 was a passenger in an unmarked police car that was driving along White Plains Road, in the vicinity of 219th Street, in the Bronx, which PO-1 knew to be a high-crime location. PO-1 observed RIVERA approaching several vehicles that appeared to be livery cabs without getting into the cabs. PO-1, another police officer who was a passenger in the unmarked police car ("PO-2"), and the police officer who was driving the car ("PO-3") decided to pull the car up alongside RIVERA to investigate. The unmarked police car double-parked along White Plains Road near RIVERA, who was standing at the curb.

       (b) RIVERA began to approach the unmarked police car, which had tinted windows, but suddenly stopped as he got near to the car. RIVERA then made a cutting motion with his hand across his neck, which PO-1 interpreted as an attempt by RIVERA to wave off the police officers whom he had observed in the unmarked vehicle. As RIVERA made this motion, PO-1 observed a black object in RIVERA's hand which PO-1 thought might be a weapon. RIVERA then quickly turned around and began walking away from the unmarked police car.

       (c) PO-1 decided to get out of the unmarked police car to investigate RIVERA further. As he walked towards RIVERA, he observed RIVERA, who was wearing a baggy jacket, place his hands into the outside front pockets of his jacket and remove them. RIVERA's actions led PO-1 to be concerned that RIVERA might have attempted to hide in his jacket pocket the black object that PO-1 had seen in RIVERA's hand earlier. As PO-1 approached RIVERA, he determined that, for his own safety, he needed to stop and pat down RIVERA before interviewing him.

       (d) When PO-1 reached RIVERA, PO-1 identified himself as a police officer. RIVERA then turned around to face PO-1, and PO-1 began to pat down RIVERA. As he patted down RIVERA's jacket, he felt a hard object that felt like the butt of a gun on RIVERA's left side. PO-1 reached inside RIVERA's jacket and

uncovered a gun, wrapped inside of a sock, from the inside left pocket of RIVERA's jacket. After PO-1 found the gun, he asked PO-2 and PO-3 for assistance in arresting RIVERA, and RIVERA was placed under arrest. After RIVERA's arrest, a bag containing approximately 9 grams of cocaine was recovered from the inside right pocket of RIVERA's jacket.

3. Later in the morning of January 4, 2008, I approached JOSE RIVERA, the defendant, and presented him with a document setting forth his Miranda rights. RIVERA waived his Miranda rights in writing. RIVERA then told me that he had found the gun earlier that day in a park, and that he had placed the gun in his coat after finding it. RIVERA also wrote and signed a statement in my presence admitting that he possessed the gun at the time of his arrest.

4. I learned from NYPD records that the gun recovered from JOSE RIVERA, the defendant, was a .25 caliber Hawes handgun, loaded with 5 rounds of .25 mm ammunition. I have spoken to an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), who informed me that, based on his training and experience, .25 caliber Hawes handguns are not and have never been manufactured in the State of New York.

5. I have reviewed the criminal history of JOSE RIVERA, the defendant. RIVERA has been convicted of the following offense: a conviction on or about December 11, 1995, in Bronx County Supreme Court for Criminal Possession of a Loaded Firearm in the Third Degree, in violation of New York Penal Law 265.02(4).

  WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JOSE REIVERA, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

                                      _____
                                      Police Officer Alejandro Zapata
                                      New York City Police Department

Sworn to before me this
18th day of January, 2008

_____
HON. ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK