USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-14-08

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA             :
                                     :
         -v-                         :    08 Cr. 100 (JSR)
                                     :
JOSE RIVERA,                         :    MEMORANDUM
                                     :
              Defendant.             :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

    By Order dated April 7, 2008, the Court granted defendant's motion to suppress physical evidence and statements. This Memorandum states the reasons for that ruling.

    At a suppression hearing held on March 26, 2008, the Government called two witnesses: New York Police Officer Levar Stockton and New York Police Sergeant John Gazzola. Sergeant Gazzola was not credible. His testimony was riddled with exaggerations and was contradicted by Stockton's testimony and by other facts of record. He claimed, for example, that when defendant Rivera approached the vehicle in which Gazzola was seated, Gazzola was able to perceive, through the windshield and at a distance of some feet, that defendant's "eyes got very large," indicating to Gazzola that defendant recognized that the vehicle's occupants were police. Transcript of March 26 Hearing ("Tr.") at 67. He claimed that the small firearm covered by a sock that was seized from the interior pocket of defendant's loose fitting jacket made a visible bulge and that, when the jacket was unzipped the sock itself was visible, id. at 70 -- statements that were contradicted not only by Stockton's testimony, e.g., id. at 49-53, but by the Court's own in-court

observation of the jacket, the sock, and the gun.  By this and other incredible assertions, as well as by his doubtful demeanor, Gazzola proved unworthy of belief in any material respect.

Stockton, however, was, for the most part, credible.  Based on his testimony, the Court finds the facts to be as follows:

Around midnight on the evening of January 3, 2008, Stockton, Gazzola, and Police Officer Luis Alemany were patrolling the 47th Precinct in the Bronx in an unmarked police car.  Near the intersection of White Plains Road and 219th Street, a location that Stockton knew to be a high crime area, Stockton noticed defendant approach and appear to speak to the driver of a parked livery cab. Stockton then observed Rivera engage in the same activity with another livery cab.

Aware that livery cabs had sometimes been the object of robberies, Stockton asked Alemany, who was driving, to make a U-turn so that they would be on the same side of the street as defendant and could observe him more closely.  Alemany did so and then double parked the unmarked car facing northbound on White Plains Road some yards south of the stop-light area where defendant had been observed. When Stockton was next able to see defendant, who had been obscured by a parked SUV, Rivera was walking toward the police car, southbound on White Plains Road.  At this point, Officer Alemany honked the horn of the unmarked car, a blue Crown Victoria with tinted windows that looked similar to the livery cabs in the area.  Rivera approached, but then waved the unmarked car off with his right hand.  The motion

drew Stockton's attention to the hand, in which defendant held a small dark object. Stockton "was not able to tell" what the dark object was, but it appeared to be a solid object that "st[u]ck[] outside of [Rivera's] hand." Tr. at 15-16.

Defendant then turned and began to walk back the way he had come. Officer Stockton got out of the car and approached Rivera, who had put his hands in his coat pockets. After Stockton said "[e]xcuse me, sir" defendant "turned right around," id. at 16, and brought his hands out of his pockets and down to his sides. Stockton now saw "a dark colored cell phone" in defendant's right hand. Id. at 17.

Stockton then began to frisk defendant. Id. at 17-18. The frisk led to the discovery of a gun in the inside left pocket of defendant's coat and a bag of cocaine in the inside right pocket.

On these facts, defendant moved to suppress the gun, as well as statements he made while in custody after his arrest that were the direct fruit of the recovery of the gun.

When a police officer has reasonable suspicion that "criminal activity may be afoot," the officer may briefly detain an individual for further investigation. See Terry v. Ohio, 392 U.S. 1, 30 (1968). The officer's reasonable suspicion of unlawful conduct must be based on "specific and articulable facts." United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007) (internal quotation marks omitted). For the police officer to engage in a frisk of a person thus detained, the officer must have "a reasonable belief that [the person is] armed and presently dangerous." Ybarra v. Illinois, 444

3

U.S. 85, 92-93 (1979).  If a stop and frisk is not based on reasonable suspicion that the person frisked is armed and presently dangerous, "[e]vidence seized pursuant to [the frisk] or evidence that is the 'fruit' of [the frisk] must be suppressed."  United States v. McCargo, 464 F.3d 192, 196 (2d Cir. 2006).

The Court finds that Stockton lacked a reasonable belief that defendant Rivera was armed and dangerous when he undertook the frisk.  Although, when Rivera waved off the vehicle in which Stockton was seated, Stockton saw a dark object in Rivera's hand that he initially testified he believed "could have been ... a weapon," Tr. at 17, he subsequently admitted that it "could have been many things" and that he "didn't know what it was."  Id. at 46.  It hardly makes sense that Rivera would have waved off the vehicle using a hand in which he held a gun -- even more so if Rivera was suspicious as to who was in the vehicle.

Furthermore, when Rivera, upon being stopped by Stockton, immediately took his hands out of his pockets, with the cell phone still in his right hand, Stockton, as he testified, thereupon "realized" that the previously unidentified object "was a cell phone."  Id. at 46.  His decision to thereupon frisk Rivera anyway -- based on nothing more than Rivera's having put his hands in his pockets -- was devoid of any reasonable basis.

Nor were there any other suspicious circumstances that might have reasonably justified the frisk.  Stockton saw no bulge in Rivera's clothing that might have indicated a concealed weapon.  Id. at 49.  When Rivera waved off the unmarked car, Stockton testified

4

that Rivera turned and "proceeded to walk ... northbound on the sidewalk," id. at 16, but never testified that Rivera rushed or hurried away. Stockton did not indicate that Rivera appeared nervous or frightened before the frisk -- indeed, Stockton stated that when he approached Rivera Rivera "turned right around." Id. at 16. As to the behavior that initially caught Stockton's attention -- approaching two livery cab drivers -- Stockton knew that the behavior was "[a]bsolutely not" wrongful or illegal but simply warranted further observation. Id. at 58.

In short, the Court concludes that all that Stockton actually saw that evening was a man lawfully approaching two livery cabs, waving off a third vehicle with a hand holding a cell phone, and putting his hands in his pockets while walking away. Although Stockton, in the one part of his testimony whose credibility the Court questions, strived to find something suspicious in this modest behavior, there is nothing in it that would justify a reasonable officer in conducting a frisk.[1]

Accordingly, the Court, by Order dated April 7, 2008, granted the motion to suppress.

                              _____
                              JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       April 14, 2008

---

[1] While Stockton testified at some length concerning his impression that Rivera was pretending to be deaf during his interaction with Stockton, Tr. 62-63, this fact cannot be used to justify the frisk because the frisk had already begun before such an interaction occurred. Id.